## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, PLAINTIFF, | CIVIL ACTION<br>NO. 24-2361 |
| v. | JURY DEMAND |
| BIGFOOT ENERGY SERVICES LLC, IRON MOUNTAIN ENERGY LLC, DEFENDANTS | |

## COMPLAINT

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race, sex, and retaliation, and to provide appropriate relief to Anjuana Cherry, Bradley May, and similarly aggrieved employees. The Defendants, Bigfoot Energy Services, LLC (hereinafter "Bigfoot") and Iron Mountain Energy LLC (hereinafter "Iron Mountain") (collectively "Defendant"), subjected Ms. Cherry and similarly aggrieved employees to a hostile work environment because of sex (female) and/or race (Black); and subjected Mr. May and similarly aggrieved individuals to retaliation for opposing Defendant's hostile work environment or otherwise engaging in activity protected by Title VII.

### JURISDICTION & VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

1

2. The employment practices alleged to be unlawful were committed in the State of Louisiana and, therefore, within the jurisdiction and venue of this Court pursuant to Title VII, 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Bigfoot has continuously been a limited liability company doing business in the State of Louisiana.

5. At all relevant times, Bigfoot has continuously been an employer engaged in an industry affecting commerce under Title VII, 42 U.S.C.§ 2000e(b), (g), and (h).

6. At all relevant times, Iron Mountain has continuously been a limited liability company doing business in the State of Louisiana.

7. At all relevant times, Iron Mountain has continuously been an employer engaged in an industry affecting commerce under Title VII, 42 U.S.C.§ 2000e(b), (g), and (h).

8. At all relevant times, Robert Sherman and Haag Sherman were managing officers of Bigfoot and Iron Mountain.

9. At all relevant times, Bigfoot and Iron Mountain have had common ownership.

10. At all relevant times, Bigfoot and Iron Mountain shared common human resources functions.

11. At all relevant times, Bigfoot and Iron Mountain shared common control over their combined labor force.

12. At all relevant times, Bigfoot and Iron Mountain have operated as an integrated enterprise (or single employer).

## ADMINISTRATIVE PROCEDURES

13. More than 30 days before the institution of this action, Mr. May filed a charge of discrimination with the Commission alleging that Defendant violated Title VII.

14. On or about March 27, 2023, the Commission issued to Defendant a letter of determination ("determination") with respect to Mr. May's charge, finding reasonable cause to believe that Defendant violated Title VII. The determination invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

15. The Commission engaged in communications with Defendant to provide the opportunity to remedy the discriminatory practices described in the determination on Mr. May's charge.

16. On or about September 7, 2023, the Commission issued to Defendant a notice of conciliation failure related to Mr. May's charge, advising that the

Commission was unable to secure a conciliation agreement acceptable to the Commission.

17. More than 30 days before the institution of this action, Ms. Cherry filed a charge of discrimination with the Commission alleging that Defendant violated Title VII.

18. On or about March 27, 2023, the Commission issued to Defendant a letter of determination ("determination") with respect to Ms. Cherry's charge, finding reasonable cause to believe that Defendant violated Title VII. The determination invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

19. The Commission engaged in communications with Defendant to provide the opportunity to remedy the discriminatory practices described in the determination on Ms. Cherry's charge.

20. On or about September 7, 2023, the Commission issued to Defendant a notice of conciliation failure related to Ms. Cherry's charge, advising that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

21. All conditions precedent to the institution of this action have been fulfilled.

## STATEMENT OF CLAIMS

22. At all relevant times, Defendant was in the business of hauling and storing oil field fluid.

## Unlawful Sex Discrimination

23. Since at least approximately 2020, Defendant has engaged in unlawful employment practices because of sex in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by subjecting Ms. Cherry and other similarly aggrieved employees to a hostile work environment because of sex (female).

    A. Ms. Cherry, a Black female, was hired by Defendant as a truck driver in or around 2017.

    B. Beginning in 2020, a male dispatcher (hereinafter, "The male dispatcher") subjected Ms. Cherry and other similarly aggrieved employees to sexual conduct, including displaying offensive sexually explicit and demeaning images of women.

    C. The male dispatcher's conduct was repeated.

    D. The male dispatcher's conduct was offensive.

    E. The male dispatcher's conduct was unwelcome.

    F. Dispatchers controlled drivers' day-to-day activities by making route assignments.

    G. Dispatchers had discretion to assign drivers to difficult or dangerous routes.

    H. The male dispatcher was a supervisor.

  I.  The male dispatcher was Defendant's agent for purposes of this litigation.

  J.  When the male dispatcher met Ms. Cherry, he told her he referred to himself as "swamp donkey."

  K.  Ms. Cherry learned that his self-given nickname was a reference to the size of his penis.

  L.  For months during Ms. Cherry's and other similarly aggrieved females' employment, the male dispatcher regularly talked about sex.

  M.  On at least one occasion, the male dispatcher showed Ms. Cherry a GIF of a sex toy being inserted into a woman's vagina.

  N.  On at least one occasion, the male dispatcher showed Ms. Cherry a photograph of a woman having sex with two men.

  O.  On at least one occasion, the male dispatcher viewed pornography in front of Ms. Cherry and a supervisor, during which he described what he was seeing in detail.

  P.  On multiple occasions, the male dispatcher told Ms. Cherry details about his sex life, including at least once complaining about not having anal sex.

  Q.  The male dispatcher discussed sex with Ms. Cherry at least once per week for several months.

  R.  The male dispatcher discussed sex with another similarly aggrieved female approximately every workday for months.

S. The male dispatcher showed that similarly aggrieved female offensive pornographic images approximately several times a week for months.

T. Male employees, including a supervisor, regularly received sexually explicit text messages from the male dispatcher and observed the male dispatcher's making sexual comments.

U. Numerous male employees laughed at the male dispatcher's behavior and participated in sending sexually offensive messages.

V. A male supervisor other than the male dispatcher was present when the male dispatcher made offensive sexual comments to Ms. Cherry.

W. Defendant's General Manager made a sexual comment, on at least one occasion, to Ms. Cherry when she bent over to pick up a pen.

X. Defendant's General Manager said something to the effect of wanting Ms. Cherry's husband to go out of town so he could come be with her.

Y. Defendant's General Manager made a sexual comment to another similarly aggrieved female on several occasions.

Z. Defendant's General Manager commented on that similarly aggrieved female's breasts.

AA. Defendant's General Manager commented that the similarly aggrieved female's husband was a lucky man because of her breasts.

BB. Defendant's General Manager said something to the effect of him wanting to lay his head between the similarly aggrieved female's breasts.

CC. Ms. Cherry and other similarly aggrieved individuals did not invite the sexual conduct described above, found it offensive, and did not welcome it.

DD. The sexual conduct described above pervaded the workplace and/or was severe.

EE. The sexual conduct described above was objectively offensive from the perspective of a reasonable person.

FF. The sexual conduct described above adversely altered the terms, conditions, or privileges of Ms. Cherry's and other similarly aggrieved individuals' employment and caused them harm.

GG. Defendant was aware of the sexual conduct described above but failed to stop and/or prevent it, or otherwise take appropriate, prompt, remedial measures.

HH. At all relevant times, Defendant failed to take reasonable measures to prevent sexual harassment in its workplace.

24. The effect of Defendant's unlawful employment practices complained of in paragraph 23 above, has been to deprive Ms. Cherry and similarly aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of sex, in violation of title VII.

25. As a result of Defendant's unlawful actions complained of in paragraph 23 above, Ms. Cherry and similarly aggrieved individuals suffered non-pecuniary losses and damages.

26. The unlawful employment acts, omissions, and practices complained of complained of in paragraph 23, above, were intentional within the meaning of Title VII, 42 U.S.C. § 2000e-5(g)(1).

27. Defendant acted with malice and/or reckless indifference to Ms. Cherry's and similarly aggrieved individuals' federally protected rights, within the meaning of Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)(1) when they engaged in the unlawful employment practices complained of in paragraph 23 above.

## Unlawful Race Discrimination

28. Since at least approximately 2019, Defendant has engaged in unlawful employment practices because of race (Black) in violation of Title VII, 42 U.S.C. § 2000e-(2)(a) by subjecting Ms. Cherry and other similarly aggrieved employees to a hostile work environment.

    A. Ms. Cherry and similarly aggrieved employees were aware that Defendant's employees, including dispatchers and supervisors, frequently used racial slurs, including referring to employees and applicants as "N***ers."[1].

    B. On numerous occasions, the male dispatcher referenced in paragraph 2323.B), above, sent racially offensive text messages to Defendant's employees.

    C. A different dispatcher maintained a confederate flag on his computer as a screensaver, which Ms. Cherry observed regularly. Ms. Cherry

---

[1] This complaint uses "N****er" instead of the well-known racial epithet. The actual word was used in Defendant's workplace. This complaint does not spell the word out in order to spare readers from needless discomfort.

and similarly aggrieved individuals reasonably perceived this as racially offensive.

  D. The dispatcher identified in paragraph 28(C), above, referred to a Black coworker as a "boy" on at least one occasion

  E. The dispatcher identified in paragraph 28(C), above, referred to another Black coworker as a "N***er," on at least one occasion.

  F. Defendant Bigfoot's General Manager used the word "N***er" almost daily in the workplace.

  G. Other supervisors regularly used the word "N***er" in in the workplace.

  H. Ms. Cherry and other similarly aggrieved employees were aware that the word "N***er" was commonly used in their workplace, causing them harm.

  I. The conduct described in this paragraph 28 was racially demeaning and offensive.

  J. Ms. Cherry and other similarly aggrieved employees found the racially demeaning conduct offensive and did not welcome it.

  K. Ms. Cherry and other similarly aggrieved employees were discriminated against because of their race, Black.

  L. The racially demeaning and offensive conduct described in this paragraph 28 pervaded the workplace and/or was severe.

      M.    The racially demeaning and offensive conduct described in this paragraph 28 adversely altered the terms, conditions, or privileges of Ms. Cherry and other similarly aggrieved employee's employment and caused them harm.

      N.    At all relevant times, Defendant failed to take reasonable measures to prevent racially demeaning and offensive conduct in its workplace.

      O.    Defendant was aware of the racially demeaning and offensive conduct but failed to stop and/or prevent it or to otherwise take appropriate, prompt remedial measures.

29.    The effect of Defendant's unlawful employment practices complained of in paragraph 28 above, has been to deprive Ms. Cherry and similarly aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of race, in violation of Title VII.

30.    As a result of Defendant's unlawful actions complained of in paragraph 28 above, Ms. Cherry and similarly aggrieved individuals suffered non-pecuniary losses and damages.

31.    The unlawful employment acts, omissions, and practices complained of complained of in paragraph 28 above, were intentional within the meaning of Title VII, 42 U.S.C. § 2000e-5(g)(1).

32.    Defendant acted with malice and/or reckless indifference to Ms. Cherry's and similarly aggrieved individuals' federally protected rights, within the meaning

of Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)(1) when it engaged in the unlawful employment practices complained of in paragraph 28 above.

## Unlawful Retaliation

33. Since at least approximately 2019 Defendant has engaged in unlawful retaliatory practices in violation of Title VII, 42 U.S.C. § 2000e-3(a) by subjecting Mr. May, and similarly aggrieved employees who engaged in protected activity, to adverse actions.

    A.    Bradley May was employed by Defendant as a truck driver. In 2020, the male dispatcher referenced in paragraph 23(28.C) above repeatedly sent him text messages containing sexually explicit images and images that were demeaning to women.

    B.    Mr. May reasonably believed that the male dispatcher's actions violated anti-discrimination law.

    C.    On approximately September 2, 2020, Mr. May complained to Defendant about the text messages.

    D.    The day after Mr. May complained, Defendant terminated Mr. May.

    E.    Defendant terminated Mr. May because of his protected activity, causing him harm.

    F.    Defendant fired similarly aggrieved employees within days or weeks of their complaining to Defendant about dispatchers or supervisors using the word N***er, causing them harm.

G. Other similarly aggrieved employees who engaged in protected activity were also subjected to retaliatory action because of that protected activity, causing them harm.

34. The effect of Defendant's unlawful employment practices complained of in paragraph 33 above, has been to deprive Mr. May and similarly aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because they engaged in protected activity by opposing discriminatory practices.

35. As a result of Defendant's unlawful actions complained of in paragraph 33 above, Mr. May and similarly aggrieved individuals lost backpay, and pecuniary and non-pecuniary losses and damages.

36. The unlawful employment acts, omissions, and practices complained of complained of in paragraph 33 above were intentional within the meaning of Title VII, 42 U.S.C. § 2000e-5(g)(1).

37. Defendant acted with malice and/or reckless indifference to Mr. May's and similarly aggrieved individuals' federally protected rights, within the meaning of Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)(1) when it engaged in the unlawful employment practices complained of in paragraph 33 above.

### EEO-1 / Recordkeeping Violations

38. From 2019 to 2021, Bigfoot has engaged in unlawful employment practices by failing to file EEO-1 reports is in violation of Section 709(c) of Title VII, 42 U.S.C. §2000e-8(c), and regulations issued thereunder, 29 C.F.R. §§ 1602.7–

1602.14.  Employers with 100 or more employees are required by the aforementioned laws to file annual accurate and complete EEO-1 reports.

39.  In 2019, Bigfoot employed at least 100 employees.

40.  Bigfoot failed and refused to fully comply with its obligation to prepare, execute, and file an accurate and complete EEO-1 report for the year 2019.

41.  In 2020, Bigfoot employed at least 100 employees.

42.  Bigfoot failed and refused to fully comply with its obligation to prepare, execute, and file an accurate and complete EEO-1 report for the year 2020.

43.  In 2021, Bigfoot employed at least 100 employees.

44.  Bigfoot failed and refused to fully comply with its obligation to prepare, execute, and file an accurate and complete EEO-1 report for the year 2021.

45.  As of the date of this action, Bigfoot never filed its required EEO-1 report for the years 2019, 2020, and 2021, in violation of Title VII.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against its employees, including by creating a hostile work environment, on the basis of sex or race.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for employees

who are female and/or Black, and that eradicate the effects of its past and present unlawful employment practices.

C. Grant a permanent injunction enjoining Defendant, it officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from retaliating any employee or applicant for engaging in activity protected by Title VII.

D. Order Defendant to institute and carry out policies, practices, and programs that prevent retaliation for engaging in activity protected by Title VII and that eradicate the effects of Defendant's past and present unlawful employment practices.

E. Order Defendant to post and keep posted the notices required by Title VII, 42 U.S.C. § 2000e-10(a).

F. Order Defendant to make Ms. Cherry, Ms. May and similarly aggrieved individuals whole by providing compensation for past and future pecuniary and nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, inconvenience, and humiliation, in amounts to be determined at trial.

G. Order Defendant to make Mr. May and similarly aggrieved individuals whole by providing them with backpay.

H. Order Defendant to pay punitive damages for its malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

I. Order Defendant to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance with Title VII, 42 U.S.C. § 2000e-8(c).

J. Order that Bigfoot, without further delay, shall prepare, execute, and file accurate and Complete EEO-1 reports as required for each prior calendar year for which it has failed to file requisite reports, including 2019, 2020 and 2021;

K. Order that Bigfoot file accurate and complete EEO-1 reports as required by law for each calendar year in the future;

L. Grant such further relief as the Court deems necessary and proper in the public interest.

M. Award the Commission its costs of this action.

### JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Respectfully submitted,

**Karla Gilbride**
General Counsel
U.S. Equal Employment Opportunity Commission

**Christopher Lage**
Deputy General Counsel
U.S. Equal Employment Opportunity Commission

**Gwendolyn Young Reams**
Associate General Counsel

U.S. Equal Employment Opportunity Commission

**Rudy L. Sustaita**
Regional Attorney
U.S. Equal Employment Opportunity Commission

**Gregory T. Juge**
Assistant Regional Attorney
U.S. Equal Employment Opportunity Commission

 /s/ Elizabeth J. Owen
**Elizabeth J. Owen**, (#33620), T.A.
    elizabeth.owen@eeoc.gov | (504) 635-2535
**Jacqueline C. Barber** (#36362)
    jacqueline.barber@eeoc.gov | (504) 635-2572
**Peter F. Theis** (#34786)
    peter.theis@eeoc.gov | (504) 635-2548
**Scott D. Wilson** (#19835)
    scott.wilson@eeoc.gov | (504) 635-2569
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130

COUNSEL FOR U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**REGISTERED AGENT FOR SERVICE OF PROCESS:**

Bigfoot Energy Services, LLC
Janet Spurlock
8197 Highway 3015
Longstreet, LA 71050.

Iron Mountain Energy, LLC
Robert A. Sherman
312 West Sabine Street,
Carthage, TX 75633

17